CLERK'S OFFICE U.S. DIST. COURT
AT BIG STONE GAP, VA
FILED

JUL 1 3 2006

JOHN F CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **RICHARD HAYNES,** ) | |
| Plaintiff, ) | Civil Action No.: 1:04cv00096 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **K-VA-T FOOD STORES, INC.,** ) | By: GLEN M. WILLIAMS |
| ) | Senior United States District Judge |
| Defendants. ) | |

This suit was brought before this court by the plaintiff, Richard Haynes, ("Haynes"), who seeks to enforce his rights as a beneficiary of a group life insurance policy under the Employment Retirement Income Security Act of 1974, ("ERISA"). Haynes's wife, Martha Haynes, ("Mrs. Haynes"), a deceased former employee of defendant K-VA-T Food Stores, Inc., ("KVAT"), was the policy holder of the group life policy. Unum Life Insurance Company of America, ("UNUM"), issued the policy. KVAT is a Virginia corporation with its principle office located in Abingdon, Virginia. This matter is before the court on Haynes's motion for summary judgment, (Docket Item No. 22), and KVAT's motion for summary judgment, (Docket Item No. 24). Jurisdiction over this matter is based upon federal question jurisdiction, 28 U.S.C. § 1331, and on ERISA, 29 U.S.C.A. § 1001, *et seq.*

## *I. Facts*

Mrs. Haynes was a long-time employee of KVAT. She took medical leave from KVAT on May 24, 2003, which continued until October 31, 2003, when she

retired because she was no longer able to work due to illness-related disability. Mrs. Haynes died from lung cancer on March 13, 2004.

While employed with KVAT, Mrs. Haynes was a policy holder of a group life insurance policy issued by UNUM, policy plan number 292000, group identification number 393924 01, ("the Policy"). The Policy became effective on April 1, 2001, while Mrs. Haynes was employed by KVAT. Upon acquiring the Policy, Mrs. Haynes did not receive a summary plan description, ("SPD"), and never did receive a SPD before she died.

After Mrs. Haynes retired on October 31, 2003, she received a letter from KVAT on or about November 18, 2003. In the letter, KVAT informed Mrs. Haynes that if she wished to continue her life insurance coverage, she needed to contact the employee benefit office within 10 days to obtain a group life insurance conversion form. During the period from November 14, 2003, through December 15, 2003, Mrs. Haynes contacted KVAT and spoke with its human resource officers, Rickie Estep, ("Estep"), and Regina Wallace, ("Wallace"). It is disputed as to whether Mrs. Haynes inquired about her life insurance in the course of her conversations with Estep and Wallace. However, it is undisputed that Mrs. Haynes mailed, at the direction of someone at KVAT, a waiver of life insurance premium form to UNUM. Apparently, Mrs. Haynes was advised by KVAT that she needed to fill out and mail to UNUM a waiver of premium form if she wanted to continue her life insurance coverage. Mrs. Haynes complied and mailed UNUM the waiver of premium form. In an affidavit, Haynes stated that he personally spoke with Donnie Meadows, ("Meadows"), who Haynes believed was a manager of the KVAT benefits plan. According to Haynes,

Meadows informed him that his wife should not be concerned about her life insurance coverage lapsing because her coverage would continue under the waiver of premium form that she had filled out and mailed to UNUM. Elizabeth D. Fleenor, Mrs. Haynes's daughter, by affidavit, testified that she answered a call from Meadows while her mother was in the hospital. UNUM, by letter dated December 9, 2003, informed Mrs. Haynes that her waiver of premium form was incomplete.

Estep and Wallace submitted affidavits, in which they swore that they were human resource officers for KVAT. According to them, they both worked in the company's Abingdon, Virginia, office. Their duties included responding to questions about KVAT's life and health insurance policies and keeping a log of all the phone calls that they received. They stated that they had no authority to manage the health and life insurance policies or to make decisions regarding the health and life insurance policies' assets or to interpret policy terms. Further, they had no authority, discretionary or otherwise, to administer the health and life insurance policies. And, Haynes has submitted no evidence to contradict this.

After the death of Mrs. Haynes on March 13, 2004, Haynes made a claim for life insurance benefits in the amount of $34,000.00. The claim was denied on April 8, 2004. Haynes filed an administrative appeal. He then received a letter from UNUM on May 7, 2004. The letter informed Haynes that his request for an appeal of the original denial of his wife's group life insurance policy claim was denied. It further informed Haynes that after his wife's coverage ended on October 31, 2003, the day of her retirement, she was no longer covered by the plan, and from the day of her retirement, she had 31 days to convert to an individual policy, which would have

-3-

Case 1:04-cv-00096-GMW-PMS   Document 34   Filed 07/13/06   Page 3 of 12   Pageid#: 198

been by December 1, 2003. The letter stated that since his wife did not apply for the conversion within the allotted time period, she was not covered on the day of her death.

Haynes subsequently filed this suit against KVAT claiming breach of its fiduciary duties as plan administrator and seeking payment of the life insurance benefits from UNUM. By order dated December 16, 2005, Haynes claim against UNUM was dismissed. The case is currently before the court on the remaining parties' cross motions for summary judgment.

## *II. Analysis*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole*

*v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 248.

Haynes first argues in his Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), that KVAT, as plan administrator, failed to provide Mrs. Haynes a SPD[1] as required by ERISA. By not providing the SPD, Haynes argues that KVAT violated its fiduciary duty, as plan administrator, which it owed to Mrs. Haynes as a plan participant.

Title 29, United States Code, Section 1002(21)(A), provides that "a person is a fiduciary with respect to a plan," and, therefore, subject to ERISA fiduciary duties, "to the extent" that he or she:

> 1.) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets
> 2.) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or

---

[1] A Summary Plan Description advises plan participants of their rights, obligations and other procedural requirements under the plan.

-5-

> 3.) has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (West 1999 & Supp. 2006). KVAT's duties and responsibilities, with regard to the plan, clearly fall within the scope of which fiduciary duties would naturally flow. KVAT was both Mrs. Haynes's employer and plan administrator and, therefore, plan fiduciary for purposes of ERISA. *See Griggs v. E.I. Dupont De Nemours & Co.,* 237 F.3d 371, 379 (4th Cir. 2001), *citing, Barnes v. Lacy,* 927 F.2d 539, 544 (11th Cir. 1991).

It is undisputed that Mrs. Haynes filled out a waiver of premium form, which she mailed to UNUM after her employment with KVAT ended. She mailed this form upon the mistaken belief that her life insurance would remain in effect. However, she should have filled out a conversion form instead of the waiver of premium form because she was no longer eligible to receive a waiver of premium because of her advanced age. By filling out the wrong form her life insurance policy was cancelled at the time of her death. Haynes argues, therefore, if Mrs. Haynes had been given the SPD by KVAT, she would have had the necessary information to avoid making this fatal mistake, and she would not have lost her life insurance coverage, due to mailing in the wrong form.

It is well established that group life insurance plan participants, covered by ERISA, have a right to convert their group life insurance plan to a individual policy when they retire. *See White v. Accident Ins. Co.,* 114 F.3d 26, 28 (4th Cir. 1997). Also, 29 U.S.C. § 1021(b)(1) is unambiguous in that it requires a plan administrator to provide plan participants with a SPD within 90 days of becoming a plan

participant. Mrs. Haynes became a plan participant on April 1, 2001, and, she never received a SPD from the plan administrator, KVAT.

KVAT violated its statutorily created fiduciary duty by not providing Mrs. Haynes the SPD within the 90 days of her becoming a plan participant. ERISA codifies and imposes a strict fiduciary duty standard on plan administrators. *See NLRB v. Amax Coal Co.,* 453 U.S. 322, 332 (1981). The United State Court of Appeals for the Fourth Circuit has, in the context of ERISA, found a plan administrator breached its fiduciary duty when the plan information required by statute was not furnished to plan participants. *See Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 73-74 (4th Cir. 1989). Therefore, it is clear that KVAT violated its fiduciary duty by not providing Mrs. Haynes with an SPD as required by the ERISA statute. This court, therefore, must determine the proper remedy for KVAT's violation of its fiduciary duty. Under 29 U.S.C. § 1132(c)(1),

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) or section 1021(f) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For

Case 1:04-cv-00096-GMW-PMS Document 34 Filed 07/13/06 Page 7 of 12 Pageid#: 202

> purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C.A. § 1132(c)(1) (West 1999 & Supp. 2005). Section 1132(c) imposes a $100 a day penalty for violation of specific statutes. The $100 penalty of § 1132 applies to 29 U.S.C. § 1166, 29 U.S.C. § 1021(e)(1) and 29 U.S.C. § 1021(f). Under section (B) of § 1132, it states that the $100 a day penalty also applies to an administrator who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish." In other words § 1132(c) applies when a plan participant has made a written request for plan information that the administrator is statutorily required to provide. There is no doubt, KVAT, as administrator of Mrs. Haynes's plan, was required to provide her with a SPD. However, for the $100 a day penalty of § 1132(c) to apply, Mrs. Haynes would have had to have made a written request for the SPD. If KVAT had not responded and then mailed the requested information to Mrs. Haynes within 30 days from receiving a written request, then the $100 a day penalty would have commenced running. It is undisputed that Mrs. Haynes did not make a written request for the SPD. However, the fact that she did not make a written request does not leave Haynes without any recourse for KVAT's fiduciary duty violation. Section 1132(c) also unambiguously states, "the court may in its discretion order such other relief as it deems proper."

The court in *Brooks v. Metrica, Inc.,* 1 F.Supp. 2d 559, 566-67 (E.D.Va. 1998),

-8-

Case 1:04-cv-00096-GMW-PMS   Document 34   Filed 07/13/06   Page 8 of 12   Pageid#: 203

relying on the United States Court of Appeals for the Ninth Circuit decision in *Crotty v. Cook,* 121 F.3d 541 (9th Cir. 1997), held that "because the [administrator] did not provide [the] [participant] with the information he sought or with the SPD within 90 days of his becoming a participant, it violated § 1332(c)." Like the plaintiff in Brooks, Mrs. Haynes did not receive a SPD within 90 days of becoming a plan participant. And, the court in *Brooks,* held that a mere violation of 29 U.S.C. § 1024(b)(1), which required that new plan participants receive a SPD within 90 days of becoming a plan participant, violated § 1132(c) without otherwise making a written request for the SPD. This court, therefore, relying on the language in § 1132(c), which says "the court may in its discretion order such other relief as it deems proper" orders that Haynes be returned to his prior position as beneficiary of Mrs. Haynes's life insurance policy as of October 31, 2003, and thereby, be the lawful beneficiary of a valid insurance policy that KVAT shall pay Haynes the sum provided for in Mrs. Haynes's insurance policy, which is $ 34,000.00.

Haynes's next argument is that the post termination notice requirement under the Consolidated Omnibus Budget Reconciliation Act, ("COBRA"), 29 U.S.C. § 1166(a), should apply to ERISA. Specifically, Haynes argues that KVAT should have sent Mrs. Haynes notice of her right to convert from the group policy to an individual policy within 14 days of a qualifying event, the qualifying event being the day Mrs. Haynes retired. Thus, Haynes argues that the Mrs. Haynes should have received post termination notice of her right to convert to an individual life insurance plan within 30 days from October 31, 2003, the day she retired from KVAT.

Both COBRA and ERISA impose notification fiduciary duties on plan

administrators. A plan under ERISA imposes on the plan administrator a 90-day period in which to furnish a plan participant with a SPD. *See* 29 U.S.C.A. § 1024 (West 1999 & Supp. 2006). Whereas COBRA imposes on the plan administrator a 30-day requirement to notify a plan participant that he has the right to continue his health benefits. *See* 29 U.S.C.A. § 1166(a) (West 1999 & Supp. 2006). These notification requirements are mutually exclusive and arise only if the plan falls under the governance of either ERISA or COBRA. "COBRA's post-termination notification provisions do not apply to an ERISA life insurance plan." *Weeks v. Western Auto Supply Co.,* 2003 W.L. 21510822, at 4 (W.D. Va. 2003). Haynes's claim falls under ERISA because the plan at issue is a group life insurance plan and not a group heath insurance plan. Therefore, the post termination notification of COBRA is not applicable to an ERISA group life insurance plan.

Haynes's final argument is that KVAT is liable for providing Mrs. Haynes with erroneous information. Specifically, in Haynes's Plaintiff's Brief In Response To KVAT's Motion For Summary Judgment On The Administrative Record, ("Plaintiff's Response"), he argues that Mrs. Haynes was told by Estep and/or Wallace that she needed to fill out and mail to UNUM a waiver of premium form instead of a conversion form. This information was erroneous, and, therefore, he argues that KVAT violated its fiduciary duty of loyalty to Mrs. Haynes through the actions of its human resource officers, Estep and Wallace, by providing Mrs. Haynes with inaccurate information.

From the record, it is apparent that Mrs. Haynes did receive a letter on or about November 18, 2003, informing her to contact KVAT's human resource office within

-10-

Case 1:04-cv-00096-GMW-PMS   Document 34   Filed 07/13/06   Page 10 of 12   Pageid#: 205

10 days if she wanted to convert her life insurance from a group plan to an individual plan. Furthermore, it is apparent that Mrs. Haynes, did not fill out the conversion form but rather filled out and mailed to UNUM a waiver of premium form. It is alleged that Mrs. Haynes was told to fill out the waiver of premium form, instead of the conversion form, by either Estep or Wallace. It is undisputed that both Estep and Wallace were human resource officers with no authority, discretionary or otherwise, over the life insurance policy.

A fiduciary under ERISA has a strict fiduciary duty of loyalty that encompasses a duty not to provide faulty information. *See Griggs,* 237 F.3d at 380. Regardless, even if Estep and Wallace did in fact did tell Mrs. Haynes to fill out the waiver of premium form instead of the conversion form, KVAT cannot be found liable for violating its fiduciary duty of loyalty. Human resource officers are not plan administrators for ERISA purposes, and, therefore, human resource officers, whose function is administrative rather than discretionary, have no fiduciary duty to plan participants. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross,* 101 F.3d 1005, 1009 (4th Cir. 1996). Again, § 1002(21)(A) of ERISA provides that "a person is a fiduciary with respect to a plan," and, therefore, subject to ERISA fiduciary duties, "to the extent" that he or she:

> 1.) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets
> 2.) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or

> 3.) has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). According to the undisputed evidence contained in their affidavits, Estep and Wallace's job descriptions and functions clearly fall outside the intended scope of this statute. Their jobs were ministerial rather than discretionary because they only answered questions about the life and health insurance policies and kept a call log. Therefore, they are not ERISA fiduciaries and consistent with this memorandum opinion Haynes's motion for summary judgment is sustained in part and overruled in part, and KVAT's motion for summary judgment is sustained in part and overruled in part.

An appropriate order will be entered.

DATED: July 7-13, 2006.

_____
Senior United States District Judge